IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Mark Bennet Holliday, as Trustee of the Patricia Anne Holliday Revocable Trust Dated December 29, 2008, amended and restated August 4, 2017,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Womble Bond Dickinson (US) LLP,<br><br>　　　　　　Defendant. | Civil Action No. 2:22-442-RMG<br><br><br>**ORDER AND OPINION** |

This matter comes before the Court on Defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Dkt. No. 19). Plaintiff filed a response in opposition (Dkt. No. 24) to which Defendants replied (Dkt. No. 25). The Court directed the parties to supplement their briefing. (Dkt. No. 30). Pursuant to that Order, both parties filed supplemental replies (Dkt. Nos. 31, 32). For the reasons set forth below, the Court grants Defendant's motion to dismiss.

**I.　Background**

Plaintiff initiated this action in federal court alleging four state law claims arising out of Defendant's legal representation of Patricia Holliday (hereafter "Decedent") and asserted federal jurisdiction on the basis of diversity. (Dkt. No. 1).[1] According to the Complaint, from March 2017 until Decedent's death in February 2020, Defendant represented and advised Decedent regarding her legal rights to distributions as part of her divorce settlement. (*See id.*, ¶¶ 11, 21, 30). This

---

[1] The Court will refer to the four state law claims collectively as the "malpractice suit."

1

representation included the filing of a lawsuit which concluded in November of 2020. (Dkt. No. 1-22).

Defendant now moves to dismiss the Complaint for lack of subject matter jurisdiction, asserting that complete diversity between the parties does not exist. (Dkt. No. 19). Mark Bennett Holliday (hereafter "Holliday") is a citizen of Utah and is both the personal representative of Decedent's estate (hereafter "Estate") and the trustee to Decedent's revocable trust (hereafter "Revocable Trust"). (Dkt. No. 1, ¶¶ 34-36; Dkt. No. 24-1). Holliday is also one of the two beneficiaries of Decedent's Estate. (Dkt. No. 19-3). Because Decedent was domiciled in South Carolina prior to her death, the Estate is a citizen of South Carolina for diversity purposes. (*See* Dkt. No. 19-2). Since Holliday is a citizen of Utah, the Revocable Trust is a citizen of Utah for diversity purposes. Defendant is organized as a limited liability partnership under the laws of North Carolina and has offices and partners domiciled in South Carolina. (Dkt. No. 19-1 at 2). Defendant does not have any partners domiciled in Utah. (*Id.*)

## II.    Standard

Federal courts are courts of limited jurisdiction, and their jurisdiction will not be presumed. *Pinkley, Inc. v. Cty. of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). District courts have diversity jurisdiction over civil actions where the amount in controversy exceeds $75,000 and there is complete diversity among the parties. 28 U.S.C. § 1332(a).

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction over an action. "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The Court must apply the standard applicable to

a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exits. *Id.* The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Id.*

### III. Discussion

Diversity does not exist if the malpractice suit must be brought by the Personal Representative of Decedent's Estate. Diversity only exists here if the case can be brought by the Trustee of the Revocable Trust. Therefore, a critical issue is whether the Estate had the legal authority to transfer the malpractice claim to the Revocable Trust. Plaintiff offers two theories to support the transfer. First, Plaintiff argues that the malpractice claim was automatically transferred from the Estate to the Revocable Trust pursuant to a pour-over provision in Decedent's will. (Dkt. No. 31 at 3). Alternatively, Plaintiff argues that the Estate assigned the malpractice claim to the Revocable Trust through a written Assignment. (Dkt. No. 24 at 2; Dkt. No. 24-1). The Court addresses both theories in turn.

### A. The Malpractice Claim Could Not Lawfully Be Transferred Pursuant the Pour-Over Provision in Decedent's Will or by Assignment, and the Assertion of the Malpractice Claim by the Trustee of the Revocable Trust is a Legal Nullity.

South Carolina's survival statute provides that "[c]auses of action for . . . any and all injuries to the person . . . shall survive both to and against the personal or real representative, as the case may be, of a deceased person." S.C. Code Ann. § 15-5-90. Unlike damages in a wrongful death action, which are for the benefit of the decedent's heirs, damages in a survival action are for the benefit of the decedent's estate. *Welch v. Epstein*, 342 S.C. 279, 303, 536 S.E.2d 408, 420 (S.C. 2000) (citing *Scott v. Porter*, 340 S.C. 158, 530 S.E.2d 389 (S.C. Ct. App. 2000)); *Carson v. CSX Transp., Inc.*, 400 S.C. 221, 242, 734 S.E.2d 148, 159 (S.C. 2012) (citing F. Patrick Hubbard &

3

Robert L. Felix, *The South Carolina Law of Torts* 706 (4th ed. 2011)). Thus, according to the South Carolina's survival statute, a survival claim may only be filed by the personal representative of the decedent's estate. *Carson*, 400 S.C. at 242-43, 273 S.E.2d at 159 (citing F. Patrick Hubbard & Robert L. Felix, *The South Carolina Law of Torts* 705-06)). South Carolina's probate code also "grants the personal representative the exclusive authority to bring civil actions—including survival actions—on behalf of an estate." *Fisher v. Huckabee*, 422 S.C. 234, 238, 811 S.E.2d 739, 741 (S.C. 2018) (citing S.C. Code Ann. § 62-3-715(20)).

Since the personal representative has the exclusive authority to bring survival actions, the presumed transfer of the legal malpractice claims to the Revocable Trust, either pursuant to a pour-over provision in Decedent's will or by Assignment, was improper and without legal effect. The legal malpractice claim must be brought, if at all, by the Estate's personal representative. The assertion of the malpractice claim by the Trustee of the Revocable Trust is a nullity and cannot be the basis of invoking the Court's jurisdiction.

**B. The Written Assignment Was Improperly Made to Invoke the Jurisdiction of the Federal Courts.**

A district court lacks jurisdiction over a civil action "in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359. The purpose of this statute is to prevent the "manufacture of Federal jurisdiction" by means of assignment or otherwise. *See Kramer v. Caribbean Mills Inc.*, 394 U.S. 823, 829 (1969). Put differently, Congress, in enacting § 1359, sought to prevent "a vast quantity of ordinary contract and tort litigation [from being] channeled into the federal courts at the will of one of the parties." *Id.* at 828; *see also Lester v. McFaddon*, 415 F.2d 1101, 1104 (4th Cir. 1969) (recognizing that the purpose of § 1359 is "to exclude from the diversity jurisdiction purely local controversies with no more than a contrived interstate appearance.").

The question of whether an assignment is collusive and motivated by the assignor's desire to obtain access to a federal court under diversity jurisdiction is one of fact. *Herzog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062, 1066 (7th Cir. 1992). Courts have considered several factors when analyzing this issue: "(i) whether there was nominal or no consideration involved in the assignment; (ii) whether the assignee had any previous connection to the assigned claim; (iii) whether there was a legitimate business reason for the assignment; (iv) whether the timing of the assignment suggests that it was merely an effort to secure federal diversity jurisdiction; (v) whether the assignor exercises any control over the conduct of the litigation; (vi) whether the assignor retains any interest in the action, *i.e.*, is the assignor to receive a percentage of the assignee's recovery." *Long & Foster Real Estate, Inc. v. NRT Mid-Atlantic, Inc.*, 357 F. Supp. 2d 911, 922-23 (E.D. Va. 2005) (internal citations omitted).

Based upon these factors, the Court finds that the presumed assignment of the Decedent's survival claim was collusive and for the purpose of invoking federal jurisdiction. The timing of the assignment strongly suggests that it was merely an effort to secure federal diversity jurisdiction. Decedent passed away on February 23, 2020. (Dkt. No. 1, ¶ 22). The underlying case from which the alleged malpractice arose concluded later that year on November 19, 2020. (Dkt. No. 1-22). After the underlying case concluded, the Plaintiff made a formal demand for damages, including attorney's fees and costs, that Defendant refused. (Dkt. No. 1, ¶ 36). On January 19, 2022, the Estate assigned any claims that the Estate may have for malpractice against Defendant to the Revocable Trust. (Dkt. No. 24-1). Then, less than a month later, Plaintiff initiated the present action on February 11, 2022. (Dkt. No. 1). Because the Assignment was made after the non-litigious demand to Defendant and shortly before litigation, the timing of the Assignment casts doubt on the legitimacy of the reasons advanced by Plaintiff. *See Dae Poong Co. v. Deiss*, No. C-

5

05-01470, 2005 WL 2000936, at *4 (N.D. Cal. August 16, 2005) (finding that the timing of the assignment casts doubt on the legitimacy of the business reasons advanced by plaintiff because the assignment occurred after a non-litigious alternative was exhausted and shortly before litigation).

Moreover, the Assignment artificially converted the claim into a dispute between citizens of different states. Holliday is both the personal representative of the Estate and the trustee of the Revocable Trust. (Dkt. No. 24-1). Additionally, Holliday and the Revocable Trust are the only two beneficiaries named in Decedent's Will. (Dkt. No. 19-3 at 13). Since the pour-over clause devised the remainder of Decedent's estate to the Revocable Trust, (Dkt. No. 19-3 at 3), any amount recovered by the Estate from the malpractice suit, if brought by the personal representative, would flow to the Revocable Trust. *Welch*, 342 S.C. at 303, 536 S.E. 2d. at 421 ("Actual damages in a survival action are awarded for the benefit of the decedent's estate.") *see also* S.C. Code Ann. § 62-3-1008 (providing that the provisions of the probate code applies if other property is discovered after the estate has been settled). Since the damages from this malpractice action would have benefited the Revocable Trust whether or not the Assignment took place, the Assignment had no practical purpose other than to manufacture federal jurisdiction.

## IV.     Conclusion

For the reasons above, the Court **GRANTS** Defendant's Motion to Dismiss (Dkt. No. 19) on two separate and independent grounds. First, the presumed transfer of the Decedent's survival legal malpractice claim was legal nullity, and the Trustee of the Revocable Trust had no authority to assert the claim that was the exclusive prerogative of the personal representative. Second, the presumed Assignment of the cause of action was collusive and for the purpose of manufacturing federal jurisdiction that otherwise did not properly exist.

s/ Richard Mark Gergel<br>
Richard Mark Gergel<br>
United States District Judge

July 28, 2022
Charleston, South Carolina